FRY, Judge (dissenting). {26} This case presents the first opportunity for any New Mexico appellate court to address the WPA, which was enacted in 2010. Because no appellate court has previously addressed this legislation, our first responsibility is to determine the Legislature’s overarching purpose in enacting it. See State ex rel. Hetman v. Gallegos, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994) (explaining that “it is part of the essence of judicial responsibility to search for and effectuate the legislative intent — the purpose or object — underlying the statute”). In my view, the Majority has overlooked this touchstone of statutory interpretation and engaged in an overly technical analysis of one portion of the WPA’s definition section. In the process, the Majority does not mention the obviously remedial purpose of the WPA as a whole. I respectfully dissent because if we consider the WPA in light of its purpose, Defendants Marshall and Padilla are “public employers” potentially subject to liability for their allegedly retaliatory acts against Plaintiff. {27} The WPA is a succinct statute whose purpose is apparent. It provides that “[a] public employer shall not take any retaliatory action against a public employee” for certain “whistleblower”-type conduct the employee engages in. Section 10-16C-3. It further provides that a public employer who violates the WPA shall be liable to the public employee for actual and special damages, reinstatement, double back pay with interest, costs and attorney fees. Section 10-16C-4(A). Given these provisions, it is clear that the Legislature intended to encourage and protect employees who report misconduct and to deter misconduct that might give rise to whistleblowing. {28} It should he with this underlying purpose in mind that we consider the definition of “public employer” in order to determine whether Plaintiff appropriately asserted claims against Defendants Marshall and Padilla. Section 10-16C-2(C) lists four definitions for the term “public employer.” The first three definitions exhaustively include every public entity that conceivably has employees. See § 10-16C-2(C)(1) - (3). It is the fourth category we are concerned with, which is the only definition that references an individual rather than an entity. It provides that a “public employer” includes “every office or officer of any entity” listed in the previous sections. Section 10-16C-2(C)(4). {29} In determining what individuals the Legislature intended to target through its use of the term “officer,” we should consider the circumstances likely to give rise to a claim under the WPA. The present case provides an example. Assuming Plaintiff can prove the allegations of her complaint, she reported what she believed in good faith to be misconduct by a probation officer. Defendants Marshall and Padilla complained to Plaintiff’s immediate supervisor about Plaintiffs report of misconduct, and Marshall told the supervisor that he wanted Plaintiff to be terminated. As a result, the board of county commissioners ultimately terminated Plaintiff. {30} These events, if proved, constitute retaliation prohibited by the WPA. Yet, under the Majority’s analysis, Defendants Marshall and Padilla — the instigators of the retaliatory conduct — cannot be held liable. Under the Majority’s analysis, the only individuals employed by the Metropolitan Court who could possibly be held liable for retaliatory conduct are those who have been delegated “a portion of the sovereign power of government.” Majority Opinion, ¶ 12 (quoting Lacy, 84 N.M. at 45, 499 P.2d at 363). In reality, given the fact that a mere handful of the people who work at Metropolitan Court have been delegated sovereign power, it is more likely that retaliatory conduct would come from someone farther down the chain of command. In such cases, the vindictive individuals who actually retaliate would be immune. {31} This cannot be what the Legislature intended in enacting the WPA. Although the retaliatory entities can certainly be held liable, as noted by the Majority, holding entities liable does little to deter the individual vindictive conduct that gives rise to retaliatory termination. In addition, holding only the entities liable certainly does not protect employees from such vindictive individuals and it would likely discourage employees from reporting government misconduct. Indeed, if a plaintiff proves WPA claims against an entity defendant and is reinstated, nothing would deter the individuals who initiated the retaliation from continuing to engage in vindictive conduct. {32} Thus, we should consider the term “officer” in the context of the protective and deterrent purposes underlying the WPA. See Lohman v. Daimler-Chrysler Corp., 2007-NMCA-100, ¶ 31, 142 N.M. 437, 166 P.3d 1091 (explaining that remedial statutes should be interpreted liberally). The Majority chooses not to take this approach and instead relies on case law interpreting “state officer” as that term is used in a venue statute. See Lacy, 84 N.M. at 44, 499 P.2d at 362. This reliance on the venue statute for guidance seems inapposite because a survey of New Mexico statutes reveals several examples of contrary definitions that might be utilized to interpret “public employer” or “officer” in a vacuum rather than in the context of the WPA. For instance, the definition of “public officer” in the Public Records Recovery Act expressly includes mere employees. NMSA 1978, § 14-5-2(A) (1973) (defining “public officer” as “any officer or employee of the legislative, executive or judicial departments of the state or any of its agencies, and any officer or employee of any of the political subdivisions of the state, who is the official custodian of any public record or class of public records”). And the Metropolitan Redevelopment Code defines “public officer” as “any person who is in charge of any department or branch of government of the municipality.” NMSA 1978, § 3-60A-4(U) (2000). {33} Obviously, the Public Records Recovery Act and the Metropolitan Redevelopment Code have nothing to do with the WPA, but neither does the venue statute upon which Lacy and the Majority rely. We should not limit our focus to the bare words “public employer” and “officer” such that we simply seek similar words in completely dissimilar contexts at the expense of legislative intent. See Bishop v. Evangilical Good Samaritan Soc., 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361 (stating that “[w]e must also consider the practical implications and the legislative purpose of the statute, and when the literal meaning of a statute would be absurd, unreasonable, or otherwise inappropriate in application, we go beyond the mere text of the statute”). Because I believe the Legislature intended to impose liability on individuals such as Defendants Marshall and Padilla if they are found to have engaged in retaliatory conduct, I respectfully dissent. CYNTHIA A. FRY, Judge